# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| WYNDOL SPAN HAMER | } | CASE NO. 04-84841-JAC-7 |
| SSN: XXX-XX-9778 | } | |
| | } | CHAPTER 7 |
| Debtor(s). | } | |
| | | |
| WYNDOL SPAN HAMER | } | A.P. NO. 04-80199-JAC-7 |
| | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| UNITED STATES OF AMERICA | } | |
| DEPARTMENT OF THE TREASURY, | } | |
| INTERNAL REVENUE SERVICE | } | |
| | } | |
| Defendant(s). | } | |

## MEMORANDUM OPINION

On May 24, 2005, this matter came before the Court for trial on the complaint of the debtor, Dr. Wyndol Hamer, to determine the dischargeability of his federal income tax liabilities for the tax years 1995, 1996, 1997, 1998, 1999 and 2000.[1] There are two issues presented in this case. The first is whether substitute returns prepared by the IRS for the 1995 and 1996 tax years qualify as filed returns for purposes of 11 U.S.C. § 523(a)(1)(B)(i). Section 523(a)(1)(B)(i) of the Bankruptcy Code provides that a discharge granted to a Chapter 7 debtor does not discharge a debtor from a tax debt with respect to which a return, if required, was not filed. The second issue presented is whether the debtor's tax deficiencies for the years 1997, 1998, 1999 and 2000 are excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). Section 523(a)(1)(C) excepts from discharge a debt for a tax

---

[1] It is undisputed that the debtor owes no assessed federal income tax liability for the 2001 tax year and that the claim of the IRS is not a claim of the kind described by 11 U.S.C. §§ 507(a)(2) or 507(a)(8) for the tax years at issue.

"with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." For the reasons dictated into the record at trial and further set out below, the Court rules in favor of the government and excepts Dr. Hamer's federal income tax deficiencies for the tax years 1995, 1996, 1997, 1998, 1999 and 2000 from discharge.

## FINDINGS OF FACT

On October 26, 2004, the debtor petitioned this Court for relief under Chapter 7 of the Bankruptcy Code. On March 22, 2005, the Court entered an order granting the debtor's Chapter 7 discharge. In the interim, on December 17, 2004, the debtor filed this complaint seeking a determination by this Court that his tax obligations for the years 1995, 1996, 1997, 1998, 1999 and 2000 are not within the exceptions to discharge set forth in 11 U.S.C. § 523(a)(1).

**A. Tax years 1995 and 1996**

The IRS argues that the debtor's tax debts for the 1995 and 1996 tax years should be excepted from discharge on the basis that the debtor failed to file tax returns for these years in contravention of 11 U.S.C. § 523(a)(1)(B)(i). In support of this argument, the IRS offered into evidence a 1995 Transcript of Account 1040 for the debtor which shows, among other things, that for the 1995 tax year no return was filed by the debtor and that a substitute for return was prepared for the debtor by the IRS. The debtor did not sign the substitute for return. For the 1996 tax year, the IRS offered a 1996 Transcript of Account 1040 which shows Dr. Hamer did not file a 1996 return and that the IRS prepared a substitute for return for said year. The debtor did not sign the

2

substitute for return. IRS exam documents for the 1995 and 1996 tax years further reflect that the debtor never filed 1995 and 1996 returns.

The debtor contends, however, that his 1995 and 1996 tax obligations do not fall within the § 523(a)(1)(B)(i) exception to discharge because the substitutes for returns prepared by the IRS were prepared with the debtor's cooperation. On exam at trial, the debtor vaguely remembered meeting with his tax attorney, Tim Corely, Esq., and an IRS agent in Florence, Alabama to work out his taxes for 1995 and 1996. The debtor could not remember whether the meeting took place in 1997 or 1999 and he was unable to remember any details regarding what information he provided the IRS during this meeting. The debtor testified that he further understood that he provided the IRS with information during a prior Chapter 11 case to establish his tax liabilities for these years, but again the debtor could not specify what information, if any, he provided the IRS.[2] Other than the debtor's vague memory of a meeting with an IRS agent in either 1997 or 1999, there is no evidence to support Dr. Hamer's contention that the IRS prepared the substitutes for returns with his cooperation or that he in some way assisted the IRS in the preparation of same.

IRS records indicate that the debtor did not agree to IRS tax assessments for the 1995 and 1996 tax years. On August 13, 2001, the IRS assessed the debtor's 1995 and 1996 tax liabilities based on exam.[3] Exclusive of interest and penalties, the debtor's 1995 federal tax liability was

---

[2] Since 1999, the debtor has been in bankruptcy under Chapter 13, Chapter 11, and now Chapter 7 of the Bankruptcy Code. On August 18, 1999, the debtor first filed a Chapter 13 petition, 99-82782-JAC-13. On February 9, 2000, the Court entered an order sustaining objections to confirmation and converted the case to Chapter 11. On March 1, 2001 the debtor voluntarily moved to dismiss the Chapter 11. On August 8, 2001, the debtor filed another Chapter 13 petition, 01-83541-JAC-13, that the Court dismissed on August 28, 2001 for failure to file schedules. On October 26, 2004, the debtor filed this current no asset Chapter 7 petition. By the time the debtor filed Chapter 7, he owed the IRS approximately $800,000.00 for tax years 1995 through 2000.

[3] Government Ex. 1, 2.

3

$168,458.00 based on the debtor's adjusted gross income of $492,906.00. During 1995, the debtor worked as an emergency room physician employed by Valley ER Physicians. The debtor had a W-4 withholding credit of $107,856.00 and made one voluntary $2,000.00 payment for the 1995 tax year. The debtor made no estimated payments for the year. During 1996, the debtor continued to be employed by Valley ER Physicians. For the 1996 tax year the debtor's adjusted gross income was $303,994.00 and the debtor's tax liability was $100,804.20. The debtor had $2.85 in taxes withheld from his wages and made no estimated tax payments. The August 13, 2001 assessments for tax years 1995 and 1996 are marked unagreed. IRS bankruptcy specialist, Mary Ann Capps, testified that the term "unagreed" indicates that the taxpayer did not agree to and did not sign the assessments. Capps admitted that she had no way of knowing if the debtor actually received the assessments, but stated that the IRS would have issued any correspondence to the debtor's last known address.

In August of 2000, the IRS issued notice to Dr. Hamer that he owed taxes and penalties for 1995 and 1996.[4] The notice of deficiency (Form 4089), dated August 14, 2000, instructed the debtor to sign and return one copy of the form if the debtor agreed to the assessment. By signing Form 4089, a taxpayer consents to the immediate assessment and collection of the amount shown in the waiver. The debtor did not respond to the notice and denies receipt of same. The IRS mailed the notice of deficiency to the debtor at 505 North Wood Avenue, Florence AL 35630 and a copy of same to the debtor's authorized agent, Timothy K. Corley, Esq. Mr. Corley is the tax attorney hired by the debtor in either 1997 or 1999 to assist the debtor with his tax issues. The debtor testified that he no longer resided at the 505 North Wood Avenue address in August of 2000 and that Corley was

---

[4] Government Ex. 16.

4

no longer his authorized agent at that time. The debtor failed, however, to notify the IRS that he no longer resided at the North Wood address. The debtor further admitted on cross examination that he filed a change of address form with the United States Postal Service to have mail forwarded to his new address.

**B. Tax years 1997, 1998, 1999 and 2000**

With respect to the debtor's tax liabilities for the years 1997, 1998, 1999 and 2000, the IRS asserts that same fall within the exception to discharge in § 523(a)(1)(C) as tax debts with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat same. On January 3, 2001, the debtor late filed his 1997 and 1998 federal income tax returns. For each year, the debtor claimed filing status as head of household despite the fact that the debtor was married to Terri Knight in 1997 and for all of 1998. The debtor did not list his wife's name on the 1997 and 1998 returns nor her social security number. For each year, the debtor listed four children as dependents. One child listed, Conner Hamer, was not born until October of 1999. None of the children listed by Dr. Hamer as dependents lived with the debtor during 1997 or 1998.

For 1997, the debtor owed taxes in the amount of $87,405.00, plus an additional $4,709.00 estimated tax penalty. During 1997, Dr. Hamer continued to work at Valley ER Physcians, but the debtor failed to have federal income tax withheld and made no estimated tax payments for 1997.[5]

---

[5] Plaintiff's Ex. 6, line 54.

5

For 1998, the debtor owed $101,859.00, plus an estimated tax penalty of $4,446.00. Dr. Hamer worked for Valley ER Physicians for all of 1998 and had $3,503.00 withheld from his salary. The debtor did not make any estimated tax payments for 1998.[6]

On October 30, 2000, the debtor late filed his 1999 federal income tax return. The debtor claimed filing status as head of household and listed four children as dependents. The debtor was married for all of 1999 and only one child lived with the debtor for a few weeks during 1999. Dr. Hamer's 1999 return reflects that he owed $149,924.00 for the year. During 1999, Dr. Hamer had $117,330.00 withheld from his salary at Valley ER Physicians and Avalon Medical. Dr. Hamer made no estimated tax payments for the 1999 tax year. The debtor did make one $1,000.00 payment with a request for an extension to file. The balance owed was $32,533.00. The IRS 1999 Transcript of Account 1040 reflects that the debtor made two additional $1,000.00 payments in October and November of 2000.

On October 15, 2001, the debtor timely filed his federal tax return for the 2000 tax year showing an income tax liability of $139,867.00, plus an estimated tax penalty of $2,397.00. Dr. Hamer had $85,769.00 withheld from his salary, but made no year 2000 estimated tax payments. The balanced owed is $56,495.00. Additionally, the debtor failed to report the cancellation of debt income in the amount of $77,879.00 and $6,163.00 as reported by First Southern Bank. The 2000 tax liability reported by the debtor does not include the tax on the cancelled debt. The debtor again listed four children as dependants though none of debtor's children lived with him during 2000.

---

[6] Plaintiff's Ex. 7.

The home in which the debtor now resides was purchased by the debtor's wife from Dr. Hamer's mother. The debtor has no non-exempt assets despite having earned significant income for each of the relevant years.

## CONCLUSIONS OF LAW

**11 U.S.C. § 523(a)(1)(B)(i): No return Filed**

As to Dr. Hamer's 1995 and 1996 tax liabilities, the dispositive issue before the Court is whether substitutes for returns prepared by the IRS for those years qualify as filed returns under § 523(a)(1)(B)(i). Dr. Hamer asserts that he provided information to the IRS which allowed the government to file the substitute returns. The IRS asserts that the substitute returns were not signed by the debtor and that same were not prepared with the debtor's assistance or assent. Under § 523(a)(1)(B)(i),

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> (1) for a tax or a customs duty –
>
> * * * *
>
> (B) with respect to which a return, if required —
>
> (i) was not filed[.]

Three things must be shown under § 523(a)(1)(B)(i) for a tax debt to be excepted from discharge as one with respect to which a required return was not filed: (1) a tax debt must have been owed; (2) the debtor must have been required to file a tax return with respect to the tax owed; and (3) the debtor must not have filed a return.[7] The IRS bears the ultimate burden to prove, by a

---

[7] *Villalon v. United States (In re Villalon)*, 253 B.R. 837, 840 (Bankr. N.D. Ohio 2000).

preponderance of the evidence, that the 1995 and 1996 claims are nondischargeable.[8] It is undisputed that Dr. Hamer was employed at all relevant times as a physician, that he owed taxes for 1995 and 1996, and was required to file returns for these years. The only remaining question is whether a return was filed for purposes of § 523(a)(1)(B)(i).

The Bankruptcy Code does not define the term "return," but most courts agree that a return for purposes of § 523(a)(1)(B) is not limited to the traditional Form 1040 return. To determine whether a document qualifies as a return, most courts apply a four-prong test under which the document must: (1) purport to be a return; (2) be executed by the debtor under penalty of perjury; (3) contain sufficient data to allow calculation of the tax; and (4) represent an honest and reasonable attempt to satisfy the requirements of the tax law.[9] Other courts do not require the document be executed by the debtor under actual penalty of perjury so long as the document is signed by the debtor and provides the information needed to compute the debtor's tax liability.[10]

In this case, the only 1995 and 1996 "returns" held by the IRS are the substitute returns prepared by the IRS. The IRS is authorized to prepare a substitute for return when the taxpayer fails to do so as required by law. The authority to prepare substitutes for returns is found in 26 U.S.C. § 6020 of the Internal Revenue Code which reads:

---

[8] *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000); *Parker v. United States (In re Parker)*, 199 B.R. 792, 797 (Bankr. M.D. Fla. 1996); *Villalon v. United States (In re Villalon)*, 253 B.R. 837, 840 (Bankr. N.D. Ohio 2000); *Crawley v. United States (In re Crawley)*, 244 B.R. 121, 125 (Bankr. N.D. Ill. 2000).

[9] *Beard v. Commissioner,* 82 T.C. 766 (1984)*; United States v. Klein (In re Klein)*, 312 B.R. 443, 447 (S.D. Fla. 2004); *Brown v. United States (In re Brown)*, 280 B.R. 760, 762 (Bankr. M.D. Ga. 2002); *United States v. Ralph (In re Ralph)*, 266 B.R. 217 (M.D. Fla. 2001).

[10] *In re Brown*, 280 B.R. at 762-63.

8

**§ 6020. Returns prepared for or executed by Secretary**

**(a) Preparation of return by Secretary.**--If any person shall fail to make a return required by this title or by regulations prescribed thereunder, but shall consent to disclose all information necessary for the preparation thereof, then, and in that case, the Secretary may prepare such return, which, being signed by such person, may be received by the Secretary as the return of such person.

**(b) Execution of return by Secretary.**--

**(1) Authority of Secretary to execute return.**--If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes, willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

**(2) Status of returns.**--Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

Courts have held that a substitute for return prepared pursuant to I.R.C. § 6020(a) may, under appropriate circumstances, constitute a filed return for purposes of § 523(a)(1)(B)(i).[11] To qualify as a return under I.R.C. § 6020(a), the taxpayer must consent to disclose all information necessary for the preparation of the return. If signed, the substitute for return may be received by the government as the return of the individual.[12]

If the substitute for return is not signed it serves only for purposes of assessment of the tax debt owed by the non-filing taxpayer.[13] A substitute for return prepared under I.R.C. § 6020(b) is prepared without the taxpayer's cooperation.[14] Under I.R.C. § 6020(b), the IRS calculates a

---

[11] *Ehrig v. United States (In re Ehrig)*, 308 B.R. 542, n. 3 (Bankr. N.D. Okla. 2004).

[12] *Johnson v. United States (In re Johnson)*, 236 B.R. 456, 460 (Bankr. M.D. Fla. 1999).

[13] *Wetzel v. United States (In re Wetzel)*, 1997 WL 834810 (9th Cir. BAP 1997).

[14] *Id.*

9

nonfiling taxpayer's liability by examining documents maintained by the IRS including Form 1099's received from a taxpayer's employer and any other documents to which the IRS has access.[15] A majority of the courts faced with such returns, have held almost uniformly that substitute returns prepared pursuant to I.R.C. § 6020(b) do not constitute filed returns for purposes of § 523(a)(1)(B)(i).[16]

In *Ehrig v. United States (In re Ehrig)*, 308 B.R. 542, 550 (Bankr. N.D. Okla 2004), the bankruptcy court concluded that a substitute for return prepared by the IRS using sources other than the debtor, that the debtor did not execute or adopt, did not qualify as a return for purposes of § 523(a)(1)(B)(i). The court explained that returns prepared by the IRS pursuant to I.R.C. § 6020(b) are effective as a return in circumstances when a return is necessary for the IRS to act for the purpose of assessment, collection or levy, but "its existence does not shield the non-filing taxpayer from the consequences of failing to file."[17] The court stated that I.R.C. § 6020(b) was "designed to advance the mission of the IRS, not to benefit the non-filing taxpayer."[18] The filing of the substitute for return by the IRS was not sufficient to prevent a finding as to nondischargeability of the debtor's corresponding tax liability as one with respect to which a required return was not filed.

In this case, the Court finds that the IRS prepared the 1995 and 1996 substitutes for returns pursuant to I.R.C. § 6020(b). The substitute returns were not signed by the debtor. Any information

---

[15] *Bergstrom v. United States (In re Bergstrom)*, 949 F.2d 341, 343 (10th Cir. 1991).

[16] *In re Johnson,* 236 B.R. at 460; *In re Bergstrom*, 949 F.2d 341 (10th Cir. 1991)(finding substitute return was not a filed return absent debtor's signature); *In re Ehrig*, 308 B.R. 542 (Bankr. N.D. Okla. 2004); *But see In re Ridgway v. United States (In re Ridgway)*, 322 B.R. 19 (Bankr. D. Conn. 2005).

[17] *Ehrig v. United States (In re Ehrig)*, 308 B.R. 542, 551 (Bankr. N.D. Ok. 2004)(citations omitted).

[18] *Id.*

10

Dr. Hamer supplied the IRS is vague at best and falls far short of the requirement under I.R.C. § 6020(a) that the taxpayer "consent to disclose all information necessary for the preparation" of the return. At trial Dr. Hamer testified that he met with an IRS agent possibly in 1997 or 1999, but the debtor could remember no details about the meeting. Dr. Hamer simply stated that he cooperated with the IRS and that he was truthful with the IRS "as far as" he could remember. At another point, Dr. Hamer stated that he "understood" that he provided information to the IRS to prepare the 1995 and 1996 returns.

The only physical evidence before the Court shows that the debtor did not agree to the assessments made by the IRS for the 1995 and 1996 tax years. In August of 2001, the IRS assessed Dr. Hamer's tax liabilities for 1995 and 1996 based on exam. The exam documents are marked "unagreed." An agent for the IRS testified that the term "unagreed" is used by the IRS to indicate that the taxpayer has not agreed to the assessment and did not sign the assessment. Additional evidence offered by the IRS includes a Transcript of Account 1040 for the 1995 tax year and one for the 1996 tax year. The transcripts are computerized printouts of all transactions related to the 1995 and 1996 tax years. The transcripts indicate whether the taxpayer filed a return and includes assessments and credits for the relevant years. Dr. Hamer's 1995 and 1996 transcripts indicate that Dr. Hamer did not file returns for these years. The only returns filed were the substitute returns prepared by the IRS. Other IRS exam documents show that the IRS did not have access to certain itemized deduction information that would have allowed the IRS to prepare the substitute returns with greater accuracy had the debtor in fact worked with the IRS to prepare same.[19]

---

[19] Government Ex. 15 and Ex. 17.

After careful consideration of Dr. Hamer's testimony and the evidence offered by the parties, the Court is convinced that the IRS prepared the 1995 and 1996 substitute returns from its own records without the debtor's cooperation. Accordingly, the Court finds that the 1995 and 1996 substitutes for returns prepared by the IRS were prepared pursuant to I.R.C. § 6020(b) and that same do not qualify as filed returns for purposes of § 523(a)(1)(B)(i).

**11 U.S.C. § 523(a)(1)(C): Fraudulent Return filed or Willful Attempt to Evade or Defeat**

The IRS asserts that Dr. Hamer's unpaid tax obligations for tax years 1997, 1998, 1999, and 2000 are excepted from discharge under § 523(a)(1)(C). Section 523(a)(1)(C) of the Bankruptcy Code provides that a Chapter 7 discharge does not discharge a debtor from a tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any matter to evade or defeat such tax[.]"[20] For tax years ending in 1997, 1998, 1999, and 2000, the IRS asserts that the debtor filed both fraudulent returns and willfully attempted to evade or defeat the tax for these years. The IRS bears the burden to prove, by a preponderance of the evidence, that the tax claims for these years are nondischargeable under § 523(a)(1)(C) as either a debt for which the debtor made a fraudulent tax return or as a debt for which the debtor willfully attempted to evade or defeat same in any manner.[21] There are two prongs under § 523(a)(1)(C): (1) the fraudulent return prong; and (2) the willful evasion prong. A tax debt is nondischargeable upon satisfaction of either.

---

[20]  11 U.S.C. § 523(a)(1)(C).

[21]  *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000); *Sly v. United States (In re Sly)*, 305 B.R. 72, 79 (Bankr. N.D. Fla. 2003).

12

**A. Willful Attempt to Evade or Defeat**

To determine whether a tax debt is excepted from discharge with respect to which a debtor has willfully attempted to evade or defeat such tax, the Eleventh Circuit has interpreted § 523(a)(1)(C) according to its plain meaning.[22] Under the plain meaning of the statute, the creditor must prove two elements to satisfy the willful evasion prong of § 523(a)(1)(C):

(1) a conduct requirement (that the debtor 'attempted in any manner to evade or defeat [a] tax'); and

(2) a mental state requirement (that the attempt was done 'willfully').[23]

For the conduct requirement, the IRS must demonstrate that the debtor sought to evade or defeat his tax liability in any manner.[24] The conduct requirement may be satisfied by a showing of either affirmative acts or acts of culpable omissions.[25] The failure to file tax returns when coupled with a failure to pay the tax is sufficient to meet the conduct requirement.[26]

In *Peterson v. United States (In re Peterson)*, 317 B.R. 556 (Bankr. N.D. Ga. 2004), the bankruptcy court held that the IRS established the conduct requirement where the debtor, a highly-educated healthcare consultant, failed to pay his tax obligations for the years at issue, had inadequate withholdings from taxes, failed to pay estimated taxes, failed to pay assessed taxes, neglected to timely file tax returns, and had both the means to pay his taxes and the ability to file his returns on a timely basis. The record in this case is strikingly similar to the fact pattern in *In re Peterson*.

---

[22] *Fretz v. United States (In re Fretz),* 244 F.3d 1323, 1327 (11th Cir. 2001).

[23] *Id.*; *Fegeley v. United States (In re Fegeley)*, 118 F.3d 979 (3rd Cir. 1997).

[24] *United States v. Spiwak (In re Spiwak)*, 285 B.R. 744, 750 (S.D. Fla. 2002).

[25] *Fretz v. United States (In re Fretz),* 244 F.3d 1323, 1329 (11th Cir. 2001).

[26] *In re Fretz*, 244 F.3d at 1328.

13

Though Dr. Hamer had substantial earnings for each year at issue, the debtor did not make any estimated tax payments for the relevant years and either had inadequate withholdings or no withholdings during each year. In 1997, the debtor owed $87,405.00 in taxes but he did not make any estimated payments for the tax year and he did not have his employer withhold any taxes. In 1998, the debtor owed $101,859.00 in taxes, but only had $3,503.00 in taxes withheld and made no estimated tax payments. In 1999, the debtor owed $149,924.00 in taxes. Dr. Hamer had $117,330.00 withheld from his salary, but made no estimated tax payments. In 2000, the debtor reported a tax liability in the amount of $139,867.00, but the debtor failed to report the cancellation of debt income in the amounts of $77,879.00 and $6,163.00. The debtor had $85,769.00 withheld, but made no estimated tax payments for the 2000 tax year. Dr. Hamer's adjusted gross income for the relevant years was: $283,103.00 in 1997; $315,199.00 in 1998; $490,624.00 in 1999; and $400,000.00 in 2000. In addition to failing to make the required payments, the debtor filed the 1997, 1998, and 1999 returns well beyond the time each became due. Dr. Hamer had both the means to pay his taxes and the ability to file his tax returns during the relevant years. Accordingly, the Court finds that the IRS has proven by a preponderance of the evidence that the debtor's acts and omissions were those of one trying to evade his tax obligations.

As for the mental state requirement, the IRS must demonstrate that the debtor acted willfully under § 523(a)(1)(C).[27] A debtor's attempt to avoid his tax obligations is considered willful if the attempt was "done voluntarily, consciously or knowingly, and intentionally."[28] Most courts use a three-prong test to determine whether a debtor's attempt to avoid or defeat taxes was willful:

---

[27] *Fretz v. United States (In re Fretz),* 244 F.3d 1323, 1330 (11th Cir. 2001); *United States v. Spiwak (In re Spiwak)*, 285 BR. 744, 750 (S.D. Fla. 2002).

[28] *In re Fretz*, 244 F.3d at 1330.

14

(1) whether the debtor had a duty under the law to file tax returns and pay taxes;

(2) whether the debtor knew he had such a duty; and

(3) whether the debtor voluntarily and intentionally violated that duty.[29]

As in most cases, the first two elements are really not at issue in this case. At trial, Dr. Hamer acknowledged that he earned sufficient income in each relevant year so that he had a duty to file and pay taxes and the debtor did not dispute that he knew he had such a duty. The only issue is whether Dr. Hamer voluntarily and intentionally violated that duty.

The Eleventh Circuit has stated that the third prong of the mental state requirement "prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate."[30] The Eleventh Circuit concluded in *United States v. Fretz (In re Fretz)*, 244 F.3d 1323 (11th Cir. 2001), that the debtor had to be regarded as having willfully attempted to evade or defeat his tax obligations despite suffering from alcoholism at the time he failed to file income tax returns or to pay taxes because there was no evidence that the debtor's failure to file returns and pay taxes was due to inadvertence or mistake. The Court stated:

> As a practicing emergency room physician, he had the means to pay his taxes, and he had the ability either to file his tax returns himself or to engage an accountant to file the returns for him. Put bluntly, someone who can control his drinking enough to perform medical procedures during twelve- to twenty-four hour hour shifts can control his drinking enough to file tax returns and pay taxes during that same period.[31]

---

[29] *Id.*

[30] *In re Fretz*, 244 F.3d at 1330.

[31] *In re Fretz*, 244 F.3d at 1331.

15

Similarly in this case, Dr. Hamer, despite having entered drug rehabilitation at one point, continued to function as physician at all relevant times and earned substantial income throughout the time period. The debtor failed to file tax returns for several years, had insufficient taxes withheld, and made no estimated tax payments. The debtor had the wherewithal to pay his taxes, but simply chose instead to ignore his duty to file and pay taxes. Accordingly, the Court finds that the IRS has satisfied the willful evasion prong under § 523(a)(1)(C).

**B. Fraudulent Return**

In determining whether a tax debt is excepted from discharge as a debt with respect to which the debtor made a fraudulent return, courts have looked to certain "badges of fraud" as circumstantial evidence because direct proof of fraud is rarely available.[32] These badges include: (1) the understatement of income made consistently overtime; (2) failure to keep records; (3) failure to file tax returns; (4) implausible or inconsistent behavior; (5) the concealment of assets; (6) failure to cooperate; (7) the transfer of assets to a family member; (8) and transfers that greatly reduced assets subject to IRS execution.[33]

After years of failing to file returns, Dr. Hamer finally began to file returns on October 30, 2000 when the debtor filed his 1999 tax return. On January 3, 2001, the debtor late filed his 1997 and 1998 returns. On each return, the debtor claimed an incorrect filing status as head of household despite being married. The debtor did not disclose his wife's name or social security number for these years. In 1997 and 1998, the debtor claimed an exemption for an unborn child. In 1997, 1998, 1999 and 2000, the debtor claimed exemptions for children that did not live with him. For the 2000

---

[32] *In re Sly*, 305 B.R. at 79.

[33] *Id.*; *United States v. Spiwak (In re Spiwak)*, 285 B.R, 744, 751 (S.D. Fla. 2002).

16

Case 04-80199-JAC   Doc 9   Filed 06/13/05   Entered 06/13/05 15:26:33   Desc Main
Document      Page 16 of 18

tax year, the debtor timely filed his income tax return, but the debtor understated his income when he failed to include the forgiveness of debt income totaling $84,042.00. The debtor has no records of his financial matters for the years in question. Finally, the Court finds it suspicious that despite having substantial earnings for each year in question, the debtor accumulated no assets during this period. Interestingly, the debtor currently resides in a house purchased by his wife from the debtor's mother. Under these circumstances, the Court finds that the debtor's tax obligations for years 1997, 1998, 1999, and 2000 are due be excepted from discharge under § 523(a)(1)(C) as debts "with respect to which the debtor made a fraudulent return or willfully attempted in any matter to evade or defeat such tax."[34]

Dr. Hamer's tax deficiencies for tax years 1995, 1996, 1997, 1998, 1999, and 2000, exclusive of penalties and the interest on penalties, are nondischargeable under § 523(a)(1) of the Bankruptcy Code.[35]

A separate order will be entered consistent with this opinion.

Dated: June 13, 2005

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc: Debtor(s)

---

[34] 11 U.S.C. § 523(a)(1)(C).

[35] *Burns v. United States (In re Burns)*, 887 F.2d 1541, 1544 (11th Cir. 1989)(finding that under § 523(a)(7) a tax penalty is discharged if the transaction or event giving rise to the penalty occurred more than three years prior to filing of bankruptcy petition); *Dippel v. United States (In re Dippel)*, 2005 WL 758801, *3 (S.D. Fla. 2005)(stating that it is undisputed that penalties, and interest on penalties, are dischargeable, where the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the petition); *Miller v. Internal Revenue Service (In re Miller)*, 300 B.R. 422 (Bankr. N.D. Ohio 2003).

17

Kevin Heard, attorney for plaintiff(s)
Candice Turner, attorney for defendant(s)
trustee

18